**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| In re KEITH ERIC TURNER and | ) | Case No. 08-60030-LYN |
| HAZEL JUANITA TURNER, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MEMORANDUM**

This matter comes before the court on a motion by the United States trustee to dismiss this case under 11 U.S.C. § 707(b)(1)&(3) as an abuse of the provisions of chapter 7 of the Bankruptcy Code. Keith Eric Turner and Hazel Juanita Turner ("the Debtors") oppose the motion. The motion will be denied.

## *I. Jurisdiction*

This court has jurisdiction over this matter. 28 U.S.C. §§ 1334(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Accordingly, this court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as directed by Fed.R.Civ.P. 52 which is made applicable in this contested matter by Fed. R. Bankr. P. 9014(c) and 7052.

## *II. Facts*

On January 8, 2007, the Debtors filed a chapter 7 petition. The Debtors scheduled no

1

priority unsecured claims and scheduled general unsecured claims in the amount of $52,807.55.[1]

The Debtors scheduled real property commonly known as 129 Mintz Lane, Amherst, Virginia ("the Real Property") as property of the estate.[2] The Debtors scheduled the Real Property at a fair market value of $171,300.00. The amount of the claim secured by the Real Property was scheduled at $199,954.14.[3]

On Schedule I, Mr. Turner scheduled monthly gross income from his employment in the amount of $3,881.62[4]. Mrs. Turner scheduled $2,743.98 in gross monthly income[5].

The Debtors scheduled net monthly income in the amount of $4,551.36.[6] The Debtors scheduled monthly expenses in the amount of $5,359.84.[7] The Debtors have one child who lives with them. The parties agree that the Debtors' monthly income is above the median income for families of three persons living in Virginia.

The Debtor also filed a Chapter 7 Statement of Current Monthly Income and Mean-Test Calculation Form ("Form 22A"). In Form 22A, the Debtors indicate that their aggregate Current Monthly Income ("CMI")[8], as defined by the Bankruptcy Code, was $6,613.74.

---

[1] See Debtors' Schedules E & F.

[2] See Debtor's Schedule A.

[3] See Debtor's Schedule A.

[4] See Debtors' Schedule I.

[5] Id.

[6] See Debtors' Schedule I.

[7] See Debtors' Schedule J.

[8] CMI is defined as "the average monthly income from all sources that the debtor receives ... without regard to whether such income is taxable income, derived during the 6-month period" preceding the month of the bankruptcy filing. 11 U.S.C. § 101(10A).

The Debtors also scheduled monthly deductions for certain expenses and deductions for debt payments as is permitted by Form 22A. They scheduled deductions based on IRS National Standards for food, clothing, household supplies, personal care, and miscellaneous in the amount of $1,123.00[9] and for health care in the amount of $162.00[10]. The Debtors also scheduled deductions based on IRS Local Standards for non-mortgage expenses in the amount of $365.00[11] and for "transportation; vehicle operation" in the amounts of $362.00, and vehicle payments in the amounts of $33.87[12], and $167.75[13].

Under "Other Necessary Expenses", the Debtors deducted payroll taxes ($1,397.72)[14], involuntary deductions for employment ($71.95)[15], and life insurance ($2.75)[16].

In addition, the Debtors deducted amounts for health insurance and disability insurance ($222.33)[17], educational expense ($25.00)[18] and charitable contributions ($150.00)[19] for a total of $397.33.

The Debtors also deducted a total of $2,537.35 for monthly payments on debts secured

---

[9] See Line 19A on the Debtors' Form 22A

[10] See Line 19B on the Debtors' Form 22A

[11] See Line 20A on the Debtors' Form 22A

[12] See Line 23 on the Debtors' Form 22A

[13] See Line 24 on the Debtors' Form 22A

[14] See Line 25 on the Debtors' Form 22A

[15] See Line 26 on the Debtors' Form 22A

[16] See Line 27 on the Debtors' Form 22A

[17] See Line 34 on the Debtors' Form 22A

[18] See Line 38 on the Debtors' Form 22A

[19] See Line 40 on the Debtors' Form 22A

by a 401(k) plan ($14.65), by the Real Property ($1,752.00), by a 2006 Kia Sorento ($444.13), by a 2006 Dodge Stratus ($310.25), and by an interest in an ERISA qualified retirement plan ($16.32).

The Debtors' deductions on Form 22A totaled $6,620.72. Their monthly disposable income under the chapter 7 means test on Form 22A is negative $418.80.

On April 7, 2008, the United States trustee filed a motion to dismiss this case for abuse under 11 U.S.C. § 707(b)(3)(B).

### *III. Discussion.*

I. Abuse under Section 707(b).

The United States trustee brings this motion on the grounds that it would be an abuse of chapter 7 to permit the Debtors to continue prosecuting this case under that chapter. A case under chapter 7 may be dismissed for abuse. See 11 U.S.C. § 707(b) as revised by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[20] Whether the prosecution of a chapter 7 case against an above-median income debtor constitutes abuse is determined under Sections 707(b)(1), (2) and (3).

Section 707(b)(1)[21] provides that a court may dismiss an individual case under chapter 7

---

[20] Section 707(b) was revised and became effective on October 17, 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). See Pub. L. No. 109-8, 119 Stat. 23 (2005).

[21] Section 707(b) (1) provides:

(b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

if (1) the debtor's debts are primarily consumer debts and (2) it would be an abuse of the provisions of chapter 7 of the Bankruptcy Code to grant relief to the debtor. The parties agree that the Debtors' debts are primarily consumer debts. The only issue before the Court is whether it would be an abuse of the provisions of chapter 7 to grant relief to the Debtors.

Section 707(b)(2) provides that abuse is presumed if a debtor's net monthly income exceeds a certain threshold amount as determined by a certain mathematical test ("the Means Test"). The United States trustee has chosen not to prosecute this motion under Section 707(b)(2).

Section 707(b)(3) provides that, if the presumption in Section 707(b)(2) does not arise or is rebutted, the court shall consider "(A) whether the debtor filed the petition in good faith; or (B) [whether] the totality of the circumstances . . . of the debtor's financial condition demonstrates abuse." The first of these two separate and independent[22] tests is referred to herein as the Good Faith Test; the second is referred to herein as the Financial Situation Test. The United States trustee asserts that the totality of the Debtors' financial circumstances indicate that it would be an abuse of chapter 7 to permit them to continued under chapter 7.

If a motion is brought under 11 U.S.C. § 707(b)(3)(B), the Court must consider the totality of the circumstances of the debtor's financial situation. This Court has previously held that a finding that the debtor can fund a chapter 13 plan is sufficient, without more, to support a

---

[22] The fact that "bad faith" and the "totality of financial circumstances" are listed in the disjunctive is very strong evidence that Congress intended that bad faith and the totality of the debtor's financial circumstances constitute independent grounds for relief. See Eugene W. Wedoff, Means Testing in the New 707(b), 79 Am. Bankr. L.J. 231 (2005). A bankruptcy court may dismiss a case if it finds that the debtor filed the petition in bad faith, *or* that the totality of the circumstances of the debtor's financial situation demonstrates abuse. Each of the two considerations is potentially sufficient for a finding of abuse. The debtor's financial situation must, therefore, have some separate implication in the context of abuse apart from considerations of bad faith for all debtors and considerations of the means test in Section 707(b)(2) for above-median debtors.

conclusion that granting relief would be an abuse of the provisions of chapter 7.  See In re Wagstaff, Case No. 07-61043-LYN (Bankr. W.D.Va. 2008).  Whether a debtor has sufficient disposable income to fund a Chapter 13 Plan is to be determined as if the debtor were a debtor under Chapter 13.  Id.

*Burden of Proof.*  Under the pre-BAPCPA law, the burden of production and the burden of persuasion in a motion to dismiss under Section 707(b) rested with the moving party.  See 4 Collier on Bankruptcy, "Dismissal", ¶ 707.04[5][a], p. 707-27 (15th ed. rev.) (Citing Green v. Staples (In re Green), 934 F.2d 568 (4th Cir. 1991)).  Collier concluded under pre-BAPCPA law that the burden was heighten because the former Code provided that "the court should give the benefit of any doubt to the debtor."  Collier, supra.  That language, however, has been removed from the Code.  While the burden of proof is no longer heightened, the United States trustee must still meet the burden of production and the burden of persuasion by a preponderance of the evidence.

II. The Debtor's Disposable Income

*Defining Disposable Income.*  Under chapter 13, an above-median income debtor must pay all of his or her projected disposable income to the trustee for five years.  See 11 U.S.C. § 1325(b)(1)-(3)[23].  "Projected disposable income" is not defined in the Bankruptcy Code.

---

[23]    Section 1325(b)(1)-(3) provides:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less

"Disposable income" means the "current monthly income" received by the debtor less "amounts reasonably necessary to be expended for support" of the debtor and his or her dependents. 11 U.S.C. § 1325(b)(2)[24]. "Current monthly income" is defined as the "average monthly income . . . that the debtor receives . . . during the 6-month period ending on the last day of the calendar month immediately preceding the date" of petition. 11 U.S.C. § 101(10A)[25]. The "amounts reasonable necessary to be expended for support" under Subsection 1325(b)(2) are to be

---

amounts reasonably necessary to be expended--
 (A)(I) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
 (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
 (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than--
 (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
 (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
 (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

[24] A debtor is also allowed deductions for post-petition domestic support obligations, charitable contributions, and business expenses.  See Subparagraphs 1325(b)(2)(A)&(B).  Those deductions are not relevant to this discussion.

[25] Section 101(10A) provides
The term "current monthly income"--
(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
 (I) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
 (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

determined in accordance with 11 U.S.C. § 707(b)(2)(A)&(B) if the debtor's "current monthly income", when multiplied times twelve, is greater than the median annual income for a family of similar size in the debtor's state, which is true in this case. 11 U.S.C. § 1325(b)(3).

To summarize, all of a debtor's "projected disposable income" to be received during the pendency of the plan must be applied to make payments to the unsecured creditors. "Disposable income" means a debtor's "current monthly income" less "amounts reasonably necessary to be expended for support" of the debtor and any dependents. The word "projected" in the phrase "projected disposable income" modifies each of the component parts of "disposable income", that is, it modifies "current monthly income" and it modifies "amounts reasonably necessary to be expended for support". "Projected disposable income", then, means the "projected current monthly income" less "projected amounts reasonably necessary to be expended for support" where "reasonably necessary to be expended for support" is to be determined in accordance with Subparagraphs 707(b)(2)(A)&(B).

A. Income[26]

The Debtors' income for purposes of the chapter 13 disposable income test is their projected current monthly income. A debtor's projected monthly income is the income that debtor will receive in the future. While the starting point for determining that income is the Debtors' current monthly income as defined in the Bankruptcy Code, it is to be ultimately determined in a chapter 13 case by considering any change in circumstances that a debtor may have experienced since the date on which he or she filed the petition. As the Court in Jass held.

The Court concludes that the word "projected" modifies the defined term "disposable

---

[26]    Addendum A, attached hereto, contains a summary of the amounts determined herein in a table that is substantially in the form of Form 22A and Form 22C.

> income" as it is used in § 1325(b)(1)(B). Form B22C will always be the starting point for
> the Court's inquiry into whether the debtor is complying with the "projected disposable
> income" requirement of § 1325(b)(1)(B). The Court will presume that the number
> resulting from Form B22C is the debtor's "projected disposable income" unless the
> debtor can show that there has been a substantial change in circumstances such that the
> numbers contained in Form B22C are not commensurate with a fair projection of the
> debtor's budget in the future.

Jass, 340 B.R. at 418.

The parties agree that Mr. Turner's average monthly income for the period from January, 2008, through November, 2008 was $4,392.00.[27] Mr. Turner testified, and the Court believes, that this level of income is far from guaranteed in the near future. His employer has closed one of its three plants and Mr. Turner is only working 32 hours per week at this time. His income in 2008, while commensurate with his income in the previous three years, was enhanced by a large project that was awarded to his employer. The evidence, then, indicates that Mr. Turner will earn no more in the future than he did, on average, during the period of January, 2008, to November, 2008. The amount of $4,392.00 accurately reflects Mr. Turner's gross monthly income. The parties agree that Mrs. Turner's average monthly income is $2,915.00.[28] The Debtors' projected gross income is $7,307.00 (= $4,392.00 + $2,915.00).

B. Deductions

The amount of deductions that are "reasonably necessary to be expended for support" is to be determined in accordance with Section 707(b)(2)(A)&(B). The deductions in Section 707(b)(2)(A) may be divided into five groups: (1) IRS National and Local Standards; (2) IRS Other Necessary Expenses; (3) Additional Statutory Expenses; (4) Payments toward secured

---

[27] See Amended Stipulation Facts at ¶17, entered on docket as docket no. 33.

[28] See Amended Stipulation Facts at ¶18, entered on docket as docket no. 33.

9

debt; and (5) Payments toward priority claims.

*IRS National and Local Standards.* A debtor may deduct the applicable monthly expense amounts specified under the IRS National Standards and Local Standards. 11 U.S.C. § 707b)(2)(A)(ii)(I). Courts have interpreted this provision in a number of different ways using at least seven different rationales.[29] Some have held that the amounts provided are maxima that a debtor may deduct.[30] Others have held that debtors are entitled to the full amount of the deduction.[31]

This Court agrees with the rationale and holding in In re Hylton, 374 B.R. 579 (Bankr. W.D. Va. 2007) (Krumm, C.J.), in which the Court held that the debtors were entitled to deduct the full amount of the allowance for vehicle payments even if they owned the vehicle free and clear of any liens. The Debtors in this case, then, are entitled to deduct the full amounts allowed under the IRS National and Local Standards.

Under the IRS National Standards, the Debtors have properly deducted $1,123.00.[32] This amount includes food, clothing, household supplies, personal care items and miscellaneous

---

[29] See In re Swan, 368 B.R. 12 (Bankr. N.D.Cal. 1007) and discussion therein in which the court identifies seven different rationales used by courts to justify their holdings regarding IRS Standards. They are: (1) the "Plain Meaning" Rationale; (2) the "Applicable v. Actual " Rationale; (3) the Unfair Results Rationale; (4) the Efficiency Rationale; (5) the "Ownership/Liability" Distinction Rationale; (6) the Policy Rationale; and (7) the Reliance on IRS Materials Rationale. These rationales are not mutually exclusive and that courts frequently rely on combinations thereof.

[30] See, e.g., In re McGillis, 370 B.R. 720 (Bankr. W.D.Mich.2007); and In re Rezentes, 368 B.R. 55 (Bankr. D.Haw.2007);

[31] See, e.g. In re Osei, 389 B.R. 339 (Bankr. S.D.N.Y.2008); In re Egbert, 384 B.R. 818 (Bankr. E.D.Ark.2008); In re Phillips, 382 B.R. 153 (Bankr. D.Mass.2008); In re Morgan, 374 B.R. 353 (Bankr. S.D.Fla.2007); In re Briscoe, 374 B.R. 1 (Bankr. D.D.C.2007); In re Swan, 368 B.R. 12 (Bankr. N.D.Cal.2007); In re Naslund, 359 B.R. 781 (Bankr.D.Mont.2006);and In re Farrar-Johnson, 353 B.R. 224 (Bankr.N.D.Ill.2006)

[32] This amount appears on the Debtor' form 22A on line 19A (and would appear on line 24A on Form 22C in chapter 13).

items.  The Debtors have also properly deducted $162.00 for Health Care.[33]

Under the IRS Local Standards, the Debtors have deducted $365.00[34] for non-mortgage housing expense, $362.00[35] for vehicle operation expense, $33.87 for transportation ownership expense for vehicle one[36], and $167.75 for transportation expense for vehicle two.[37]  Even if the Debtors made payments on the two vehicles in an amount less than the statutory allowed amount, they would nonetheless be entitled to take the statutory deduction for purposes of calculating their disposable income in chapter 13.  See Hylton.

*IRS Other Necessary Expenses.*   The Debtors may deduct "actual monthly expenses for categories specified as Other Necessary Expenses issued by the Internal Revenue Service." 11 U.S.C. § 707b)(2)(A)(ii)(I).  These amounts are to be determined by the actual amount of the monthly expense for each item.  See Hylton.

The first of these other necessary expenses is taxes, such as income taxes, self employment taxes, social security taxes and medicare taxes.  The parties stipulate that Mr. Turner's net income for the period from January 2008, to November, 2008, after payroll

---

[33] This amount appears on the Debtor' form 22A on line 19B (and would appear on line 24B on Form 22C in chapter 13).

[34] This amount appears on the Debtor' form 22A on line 20A (and would appear on line 25A on Form 22C in chapter 13).

[35] This amount appears on the Debtor' form 22A on line 22A (and would appear on line 27A on Form 22C in chapter 13).  "The operating costs include maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls."  See IRS Collection Financial Standards at http://www.irs.gov/individuals/article/0,,id=96543,00.html.

[36] This amount appears on the Debtor' form 22A on line 23 (and would appear on line 28 on Form 22C in chapter 13).   This amount is calculated by deducting the actual monthly vehicle payment from the allowed IRS standard.

[37] This amount appears on the Debtor' form 22A on line 24 (and would appear on line 29 on Form 22C in chapter 13).   This amount is calculated by deducting the actual monthly vehicle payment from the allowed IRS standard.

11

deductions for payroll taxes and social security, insurance, union dues, 401(k) loan repayments and contributions and uniforms is $2,547.00.[38] His payroll deductions for these items total $1,845.00 ( = $4,392.00 - $2,547.00).

The parties have stipulated that Mrs. Turner's net monthly income after deductions for payroll taxes and social security taxes, insurance, union dues, 401(k) contributions, 401(k) loan repayments, and contributions to the United Way is $2,145.00.[39] The parties stipulate that Mrs. Turner's payroll deductions are $770.00 ( = $2,915.00 - $2,145.00). The total payroll deductions are $2,615.00 ($770.00 + $1,845.00).[40]

This amount includes insurance ($207.59), union dues ($52.15), 401(k) contributions ($138.46), 401(k) loan repayments ($125.96), contributions to United Way (4.33), and uniforms $25.80).[41] The totals of these amounts is $554.29. If we deduct $554.29 from $2,615.00, we arrive at the amount of the Debtors' withholdings that is due to payroll taxes. That amount is $2,060.71.

The Debtors also include $71.95 for union dues and uniform costs and $2.75 for life insurance premiums as other necessary expenses. The United States trustee does not object to these amounts.

The Debtors' total deductions for IRS National Standard Deductions, Local Standard Deductions, and Other Necessary expenses is $4,349.03.

---

[38] Id.

[39] Id.

[40] This is the amount stipulated by the parties in the Amended Stipulation of Facts. The amount does not, however, equal the amount provided by the United States trustee's summary. See the United States trustee's Exhibit 1A.

[41] These amounts are taken from Exhibit A of the United States trustee.

*Additional Statutory Expenses.* The Debtors are permitted to deduct certain other expenses under 11 U.S.C. § 707b)(2)(A)(ii)(II)-(V). The Debtors have included Health Insurance ($222.33), Education expense for a dependent child under 18 ($25.00), and Continued Charitable Contributions ($150.00). These deductions total $397.33.

*Payments Toward Secured Debt.* The Debtors are permitted to deduct payments toward secured debt. 11 U.S.C. § 707b)(2)(A)(iii).

The Debtors have scheduled payments toward five debts secured by collateral, including two vehicles and their residence. The total deductions is $2,537.35.

*Payments toward priority claims.* The Debtors are permitted to deduct payments toward debt constituting priority claims. 11 U.S.C. § 707b)(2)(A)(iv). The Debtors have not made any deductions based on priority claims.

    C.     Calculating the Debtor's Disposable Income.

The Debtors' income for purposes of determining disposable income if the Debtors were prosecuting this case under chapter 13 would be $7,307.00. The amounts that they would be allowed to deduct from their gross income would be:

| | |
|---|---|
| IRS Local and National Standards: | $4,349.03 |
| IRS Other Necessary Expenses | $ 397.33 |
| Additional Statutory Expenses | $   00.00 |
| Payments toward Secured debt | $2,537.35 |
| Payments toward Priority Claims: | $   00.00 |
| Total Deductions: | $7,283.71 |

For purposes of the chapter 13 disposable income test, the Debtors' projected monthly income is only $22.79 ( = $7,307.00 - $7,283.71) per month more than their projected monthly deductions. This amount does not take into consideration the Debtors' 401(k) contributions of $138.46 per month, which they would be allowed to take. Consequently, in a chapter 13 case, the Debtors

13

would not have sufficient disposable income to even pay their attorneys's fees, even if they were not allowed a deduction for their 401(k) contributions.

## *Conclusion*

It is not an abuse of the provisions of chapter 7 for the Debtors to prosecute this case under that chapter.

The motion of the United States trustee will be denied. An appropriate order shall issue.

Upon entry of this Memorandum the Clerk shall forward a copy to the United States trustee, the chapter 7 trustee, and William Schneider, Esq., counsel for the Debtors .

Entered on this 17th day of March, 2009.

William E. Anderson
United States Bankruptcy Judge

| ADDENDUM A: SUMMARY OF DISPOSABLE INCOME ANALYSIS |||||||
|---|---|---|---|---|---|
| Form 22A | Form 22C | | US Trustee | Debtors | Allowed |
| | | | | | |
| Part IV Line 18 | Part III Line 20 | Income | $4,392.00<br>$2,547.00<br>$7,307.00 | $4,392.00<br>$2,547.00<br>$7,307.00 | $4,392.00<br>$2,547.00<br>$7,307.00 |
| | | Total Income | | | **$7,307.00** |
| | | | | | |
| Part V(A) Lines 19-24 | Part IV(A) Lines 24A - 29 | IRS Deductions: (Statutory) | | | |
| 19A | 24A | IRS National Standards: (Food, Clothing Household Supplies, Personal Care, Misc.) | | | $1123.00 |
| 19B | 24B | IRS National Standards: Health Care. | | | $162.00 |
| 20A | 25A | IRS Local Standards: Housing Non-Mortgage/Rent | | | $365.00 |
| 22A | 27A | IRS Local Standards: Vehicle Expenses for (2) Vehicles | | | $362.00 |
| 23 | 28 | IRS Local Standards Vehicle Payments [#1] ($478.00- $444.13) | | | $33.87 |
| 24 | 29 | IRS Local Standards: Vehicle Payments [#2]($478.00 - $310.25) | | | $167.75 |
| 25 | 30 | Taxes | | | $2,060.71 |

15

| | | | | | |
|---|---|---|---|---|---|
| 26 | 31 | Involuntary Payroll Deductions: Union Dues and Uniform Costs. | | | $ 71.95 |
| 27 | 32 | Life Insurance | $ | $ | $ 2.75 |
| 33 | 38 | Total IRS Deductions. | | | **$4,349.03** |
| | | | | | |
| Part V(B) | Part IV(B) | Additional Expenses under § 707(b). | | | |
| 34 | 39 | Health Insurance | $ | $ | $222.33 |
| 38 | 43 | Education Expense for Dependent under 18. | | | $ 25.00 |
| 40 | 45 | Continued Charitable Contribution | | | $150.00 |
| | | Total: Additional Expenses under § 707(b) | | | **$397.33** |
| | | | | | |
| Part V(C) | Part IV(C) | Payments Toward Secured Debt | | | |
| 42a | 47a | Interest in 401(k) plan (Fidelity) | $ | $ | $ 14.65 |
| 42b | 47b | Mortgage (Residence) | $ | $ | $1,752.00 |
| 42c | 47c | 2006 Kia Sorento | $ | $ | $ 444.13 |
| 42d | 47d | 2006 Dodge Stratus | $ | $ | $ 310.25 |
| 42e | 47e | Interest in Genworth Financial Savings Plan | $ | $ | $ 16.32 |
| | | Total: Payments on Secured Debt | | | **$2,537.35** |

| Calculation of Disposable Income | | | |
|---|---|---|---|
| Lines | Income | Deductions | Total |
|  |  |  | $7,307.00 |
| IRS Standards & IRS Other Nec. Exp. |  | $4,349.03 |  |
| Other Statutory Exp. |  | $  397.33 |  |
| Secured Debt |  | $2,537.35 |  |
| Priority Claims |  | $   00.00 |  |
| Total Deductions |  |  | $7,283.71 |
|  |  |  |  |
| Monthly Disposable Income | | | $   23.79 |